1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5            FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7

8

9

10

11

12   GARY DRUMMONDS,

13            Plaintiff,                 1:03 CV 5117 OWW WMW P

14      vs.                             FINDINGS AND RECOMMENDATIONS
                                        RE MOTION FOR SUMMARY JUDGMENT
15                                      (DOC 76)

16

17   SERGEANT MILLER, et al.,

18            Defendants.

19

20

21       Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C.

22   § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C.

23   § 636(b)(1).  Pending before the Court is Defendants' motion for summary judgment.  Plaintiff

24   has not opposed the motion.

25       This action proceeds on the May 24, 2004, first amended complaint.  This action proceeds

26   against Defendants Miller, Griffin and Pendergraft on Plaintiff's claim of denial of access to the

1   courts in violation of the First Amendment.   Specifically, Plaintiff alleges that Defendants

2   violated his constitutional rights by refusing to post his mail to the courts and attorneys, and by

3   refusing to deliver magazines to him.   Defendants seek summary judgment on the ground that

4   there is no evidence of a triable issue of fact, and they are therefore entitled to summary

5   judgment.

6                                      SUMMARY JUDGMENT STANDARD

7            Summary judgment is appropriate when it is demonstrated that there exists no genuine

8   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

9   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

10                   always bears the initial responsibility of informing the district court
                     of the basis for its motion, and identifying those portions of "the
11                   pleadings, depositions, answers to interrogatories, and admissions
                     on file, together with the affidavits, if any," which it believes
12                   demonstrate the absence of a genuine issue of material fact.

13   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

14   burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

15   made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

16   on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

17   upon motion, against a party who fails to make a showing sufficient to establish the existence of

18   an element essential to that party's case, and on which that party will bear the burden of proof at

19   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

20   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

21   circumstance, summary judgment should be granted, "so long as whatever is before the district

22   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

23   satisfied."  Id. at 323.

24            If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

26

1   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

2        In attempting to establish the existence of this factual dispute, the opposing party may not

3   rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

4   form of affidavits, and/or admissible discovery material, in support of its contention that the

5   dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

6   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

7   suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

8   Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

9   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

10  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

11       In the endeavor to establish the existence of a factual dispute, the opposing party need not

12  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

15  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

17  amendments).

18       In resolving the Motion for Summary Judgment, the Court examines the pleadings,

19  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

21  255, and all reasonable inferences that may be drawn from the facts placed before the court must

22  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

23  Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam).  Nevertheless, inferences are not drawn out

24  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

25  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

26

1   Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

2       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3   show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

4   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

5   issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

6                    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

7       1.  Plaintiff is lawfully incarcerated pursuant to a 1997 conviction for forcible oral

8   copulation.  (Defs.' Ex. A, Abstract of J., San Diego County Superior Court Case No.

9   SCD129629.)

10      2.  In 2000 and 2001, Plaintiff was incarcerated at the California Substance Abuse

11  Treatment Facility and State Prison (SATF). (Defs.' Ex. B, Pl.'s Movement History.)

12      3.  Plaintiff has filed two petitions for writs of habeas corpus before the United States

13  District Courts in California, *Drummonds v. Adams*, casdce 3:2001cv01325, and *Drummonds v.*

14  *Terhune*, casdce 3:200cv01140, *Drummonds v. Adams,* was pending between July 23, 2001, and

15  October 7, 2003, and *Drummonds v. Terhune*, was pending between June 6, 2000, and February

16  16, 2001.  (Defs.' Ex. C, Public Access to Court Electronic Records (PACER) Civil Name

17  Search Results; Defs.' Ex. D, PACER Docket for *Drummonds v. Adams*, Defs.' Ex. E, PACER

18  Docket for *Drummonds v. Terhune.*

19  _____4.  In *Drummonds v. Adams,* casdce 3:2001cv01325, Plaintiff filed a request to

20  voluntarily dismiss the petition without prejudice claiming he had committed various procedural

21  errors in filing the petition.   The proof of service on Plaintiff's request for dismissal is December

22  18, 2001.  The document was received by the U.S.D.C. on December 28, 2001, but it is docketed

23  as January 9, 2002, and filed *nunc pro tunc* following a Notice of Document Discrepancies for

24  Plaintiff's failure to follow local rules.  On August 7, 2002, the Court ordered the petition to be

25  dismissed with prejudice.  (Defs.' Ex. D, Docket Entries 17, 18, 20.)

26

5.  In *Drummonds v. Terhune*, casdce 3:2000cv01140, the respondent had filed a motion to dismiss the petition for failure to exhaust administrative remedies on August 2, 2000.  (Defs.' Ex. E, Docket Entries 7-9.

6.  In *Drummonds v. Terhune*, casdce 3:2000cv01140, after obtaining an extension of time, Plaintiff filed an opposition to respondent's motion to dismiss, on September 14, 2000. (Defs.' Ex. E, Docket Entries 10-12.)

7.  In *Drummonds c. Terhune*, casdce 3:2000cv01140, the Court dismissed the petition without prejudice on February 15, 2001, finding all the claims in Plaintiff's petition were unexhausted. (*Id.* Docket Entry 23.)

8.  The California Substance Abuse Treatment Facility and State Prison (SATF) has a policy providing that inmates may confidentially correspond with state and federal elected officials and appointees, any city, county, state or federal officials having responsibility for the inmate's present, prior, or anticipated future custody, parole, or probation supervision, all judges, and courts, an attorney listed with a State Bar Association, certain public new media reporters, and certain staff of the CDCR.  Documents posted through the SATF mail-room that fulfill one or more of these criteria are termed "legal mail." (Defs.' Ex. F, Griffin Decl., ¶ 2.)

9.  To avail of the legal mail program, SATF inmates provide the unsealed correspondence to a housing unit staff member who initials, seals and dates the envelope, and delivers it to central control no later than 6:30 a.m. (*Id.* ¶ 3 .)

10.  SATF mail-room staff then pick up the legal mail from central control foyer for processing, and deliver it to the United States Post Office by 12:00 noon  (*Id.* ¶ 4 .)

11.  Defendant Griffin was a sergeant in the SATF mail-room in 2001, but he does not currently have an independent recollection of any particular piece of mail inmate Drummonds may have attempted to mail out from the SATF mail-room in 2001, he has never removed from the mail any piece of legal mail being sent by an inmate through the SATF mail-room unless it

was improperly addressed, failed to show a return address, or violated some other of the SATF rules and regulations for sending out legal or regular mail  (*Id*. ¶¶ 1, 7 .)

12.  If on any occasion Griffin ever failed or refused to mail out a piece of mail received in the SATF mail-room from an inmate, he would have promptly notified the inmate in writing of the event, including the date of occurrence, the reason why he was unable to mail out the piece of mail, and the disposition of the piece of mail.  (*Id*. ¶  7.)

13.  During the year 2000, Defendant Miller was assigned to work as a Sergeant in the mail-room at SATF.  (Defs.' Ex. G, Miller Decl., ¶ 2.)

14.  Miller's assignment in the mail-room at SATF ended at the end of December 2000, and he was transferred to work in another section of the prison.  He never subsequently transferred back to work in the SATF mail-room after December 2000.  He transferred to work in another prison as of April 1, 2001.  (*Id*. ¶ 3 .)

15.  Although Miller does not currently have an independent recollection of any particular pieces of mail inmate Drummonds may have attempted to mail out from the SATF mail-room in 2000 or 2001, he has never removed from the mail any piece of legal mail being sent by an inmate through the SATF mail-room unless it was improperly addressed, failed to show a return address, or violated some other of the SATF rules and regulations for sending out legal or regular mail.  (*Id*. ¶ 5 .)

16.  If on any occasion Miller ever failed or refused to mail out a piece of mail received in the SATF mail-room from an inmate, he would have promptly notified the inmate in writing of the event, including the date of occurrence, the reason whey he was unable to mail out the pieces of mail, and the disposition of the piece of mail.  (*Id*. ¶ 6 .)

17.  Because Miller did not handle inmate mail after December 2000, he did not remove any piece of outgoing inmate mail for any reason after December 2000.  (*Id*. ¶  7.)

18.  Drummonds admitted in his deposition that he does not have any evidence that Miller

1   or Griffin removed the items of mail identified in his complaint.  Rather, Drummonds "deduced"

2   that Miller or Griffin must have removed the pieces of mail solely on Drummonds' belief that the

3   mail did not arrive at its destination and that Miller and Griffin had the opportunity as the mail-

4   room sergeants to remove the mail.  (Defs.' Ex. I, Pl.'s Depo., Oct. 2, 2007, p. 22-27; p. 35.)

5       19.  For example, Drummonds testified as follows:

6       Q: Now you said that Miller failed to mail these out or destroyed these
            letters to  Mr. Hurtle.  How do you know that happened?
7
        A: By deduction.  I wasn't-
8
        Q: Excuse me?
9
        A: I wasn't standing in the mail room watching Sergeant Miller tear them up
10            and throw them away.

11      Q: Right.

12      A: I wish I was.

13      Q: But can you tell me the process of your deduction?

14      A: Yes, I write a letter.  It put it in - I send out confidential mail.  It gets
            logged in my building in the confidential mail log, legal mail log.  It goes
15           presumably to the mail room.  I'm not there to see it go there, but I
            assume that it gets to the mail room.  It gets logged in the mail room
16           computer is being sent out and it isn't received.  Over and over and over again.

17   (Defs.' Ex. I, p. 26-27.)

18
19      20.  Defendant Pendergraft-Del Vecchio was assigned to work in the mail-room at SATF

20   between April 2001 and July 2002.  (Defs.' Ex. H, Pendergraft-DelVecchio Decl., ¶ 2)

21      21.  One of her assigned duties at SATF was to review the incoming magazines and

22   periodicals addressed to inmates to ensure that the content of the magazines and periodicals did

23   not violate prison rules and regulations. (*Id.* ¶ 5 .)

24      22. Defendant Pendergraft-Del Vecchio has been instructed that the California Code of

25   Regulations, Title 15, SATF Operational Procedure 129, and the California Penal Code prohibit

26   inmates from possessing magazines or periodicals that are obscene, tend to incite violence, or

concern gambling, lotteries, the making of weapons, destructive devices, plans to escape or assist in an escape from lawful custody, or any information that would create a clear and present danger of violence and physical harm to persons in or outside of the facilities of the Department. (*Id*. ¶ 4.)

23. Defendant Pendergraft-Del Vecchio was instructed to review inmate periodicals and magazines during the time she worked at SATF, and if they contained any of the material described above she was instructed not to process these periodicals and magazines for delivery to the inmate-addressee. (*Id*. ¶ 5 .)

24. If she was not certain whether it would violate the Department's rules to process a certain periodical or magazine to an inmate for delivery, she would consult with the mail room sergeant or supervisor to determine whether the magazine or periodical could be delivered to the inmate. (*Id*. ¶ 6 .)

25. Whenever Pendergraft-Del Vecchio received a magazine or periodical for processing that could not be delivered to an inmate because it was prohibited by the regulations and rules described above, she was instructed to notify the inmate in writing of name and the date of the publication; and the reason it could not be delivered to the inmate. (*Id*. ¶ 7 .)

26. Although Defendant Pendergraft-Del Vecchio does not currently have a specific, independent recollection of inmate Drummonds or his magazines, she never removed, destroyed or returned any inmate's magazines or periodicals unless delivery to the inmate would violate the rules and regulations described above. (*Id*. ¶ 9 .)

27. If she ever failed to process any of inmate Drummonds' magazines or periodicals for delivery to him it would have been because the magazine or periodical contained content that the Department's rules and regulations prevented inmates from possessing. If she had failed to deliver to Drummonds any magazine or periodicals addressed to him, she would have notified him in writing that she was unable to deliver the particular magazine or periodical, and the reason

8

1  she could not deliver it.  (*Id.* ¶ 10 .)

2      28.  The documents Drummonds was attempting to mail on December 27, 2000, were

3  documents showing that the victim of his crime was not a minor.  (Defs.' Ex. I, p. 19.)

4  ANALYSIS

5      Prisoners have "a First Amendment right to send and receive mail."  Witherow v. Paff, 52

6  F.3d 264, 265 (9th Cir. 1995).  Prison regulations relating to the regulation of incoming mail are

7  analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-

8  91 (1987).  Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  The regulation is valid if it is

9  reasonably related to legitimate penological interests.  Turner, 482 U.S. at 89.  In determining the

10  reasonableness of the regulation, court must consider the following factors: (1) whether there is a

11  "valid, rational connection between the regulation and the legitimate government interest put

12  forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the

13  impact that the "accommodation of the asserted constitutional right will have on guards and other

14  inmates," and (4) "the absence of ready alternatives."  Turner, 482 U.S. at 89-90.

15      Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey,

16  518 U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996).  The right is limited to direct criminal appeals,

17  habeas petitions, and civil rights actions.  Id. at 354, 2181-82.  Claims for denial of access to the

18  courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained"

19  (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried

20  (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-

21  87 (2002).  To prevail on a claim, the plaintiff must show that he suffered an actual injury by

22  being shut out of court.  Id. at 415, 2187; Lewis, 518 U.S. at 351, 2180.

23      As to Defendant Miller, Plaintiff's claims against Miller are that: (1) Miller removed a

24  piece of his outgoing mail from the SATF mailroom on December 27, 2000, causing Plaintiff's

25  writ of habeas corpus to be dismissed; (2) Miller removed six pieces of mail addressed to

26

1   Elizabeth Barronco, an attorney, between August 10, 2000, and October 2, 2000; and (3) Miller

2   removed and destroyed three pieces of outgoing mail from the SATF mailroom addressed to

3   Ombudsman K. Hurdle on December 11, 2000, January 19, 2001, and May 7, 2001.

4           Though Plaintiff contends that the documents he was attempting to mail on December 27,

5   2000, were documents proving he is factually innocent of the crime for which he was convicted,

6   the court eventually dismissed the petition challenging his conviction for failure to exhaust

7   administrative remedies.   (Defs.' Ex. E, Docket Entry 23.)   Miller declares that he does not

8   currently have an independent recollection of any particular pieces of mail inmate Drummonds

9   may have attempted to mail out from the SATF mail-room in 2000 or 2001, he has never

10  removed from the mail any piece of legal mail being sent by an inmate through the SATF mail-

11  room unless it was improperly addressed, failed to show a return address, or violated some other

12  of the SATF rules and regulations for sending out legal or regular mail.   (Miller Decl. ¶ 5 .)   In

13  his deposition, Plaintiff essentially concedes that he has no basis on which to show that Miller

14  removed any piece of mail.  Plaintiff "deduced" that Miller must have removed the mail because

15  it did not arrive at its destination.  (Pl.'s Depo., Oct. 2, 2007, p. 22-27; p. 35.)

16          The Court finds that Defendant Miller has met his burden on summary judgment.  The

17  evidence submitted my Miller indicates that he did not remove Plaintiff's mail and that, in any

18  event, the petition was not dismissed on the ground of lack of evidence or a failure to timely

19  submit the petition.  The petition was dismissed for Plaintiff's failure to exhaust his available

20  administrative remedies.  There is no evidence that Plaintiff has suffered any injury within the

21  meaning of Bounds v. Smith, 430 U.S. 817, 821 (1977).   Plaintiff has not filed opposition to the

22  motion for summary judgment.  Defendant Miller is therefore entitled to judgment.

23          Plaintiff's claims against Defendant Griffin are that: (1) Griffin removed and destroyed a

24  piece of his outgoing mail from the SATF mailroom on December 15, 2001, causing Plaintiff's

25  writ of habeas corpus to be dismissed with prejudice; and (2) Griffin removed seven pieces of

26

1  mail addressed to the Office of the Inspector General, between August 5, 2001, and December

2  23,2001.

3        The evidence submitted by Griffin indicates that Plaintiff's only active federal habeas

4  corpus action during December of 2001, was *Drummonds v. Adams*, casdce 3:2001cv01325.

5  (Defs.' Ex. E, PACER Docket for *Drummonds v. Terhune*.)  In that case, Plaintiff mailed a

6  request to voluntarily dismiss the petition without prejudice on December 18, 2001. (Defs.' Ex.

7  D, Docket Entries 17, 18, 20.)  The document was received by the District Court on December

8  28, 2001, but it is docketed on January 9, 2002, and filed *nunc pro tunc* following a Notice of

9  Docket Discrepancies for Plaintiff's failure to follow local rules.  (*Id.*)  On August 7, 2002, the

10  court ordered the petition be dismissed with prejudice.  (*Id.*)   Griffin declares that had he ever

11  refused to mail a particular piece of mail, he would have, in accord with policy, notified Plaintiff

12  of the event, in writing, including the date of occurrence, the reason why he was unable to mail

13  out the piece of mail, and the disposition of the piece of mail.  (Griffin Decl. ¶ 7.)

14        The Court finds that Defendant Griffin has met his burden on summary judgment.  The

15  evidence submitted my Griffin indicates that he did not remove Plaintiff's mail and that, in any

16  event, the petition was not dismissed on the ground of lack of evidence or a failure to timely

17  submit the petition.  Though the petition was dismissed of failure to comply with the local rules,

18  Plaintiff submitted a voluntary dismissal of his petition.  There is no evidence that the petition

19  was dismissed as a result of any conduct of Griffin.  There is no evidence that Plaintiff has

20  suffered any injury within the meaning of <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).   Plaintiff

21  offers no evidence that Miller or Griffin interfered with Plaintiff's correspondence.  That Plaintiff

22  "deduced that Miller and Griffin interfered with his mail does not subject them to liability for

23  interfering with Plaintiff's legal mail.   Plaintiff has not filed opposition to the motion for

24  summary judgment.  Defendant Miller is therefore entitled to judgment.

25

26

1

2

3          As to Defendant Pendergraft, Plaintiff's claims against here are that she improperly

4   refused to deliver Plaintiff's magazines or periodicals.   As with other forms of mail, inmates

5   have a First Amendment right to receive magazines and periodicals while incarcerated.  Prison

6   Legal News v. Cook, 238 F.3d 1145, 1152-53 (9th Cir. 2001); Morrison v. Hall, 261 F.3d 896,

7   905 (9th Cir. 2001).   However, prison administrators may apply reasonable regulations on prison

8   magazines and periodicals as long as the regulations are reasonably related to a legitimate

9   government interest.  Mauro v., Arpaio, 188 F.3d 1054 (9th Cir. 1999)(applying factors of Turner

10  v. Safley, 482 U.S. 78, 89 (1987), to uphold ban on publications containing frontal nudity).

11         Pendergraft declares that she has no knowledge that she capriciously refused to deliver a

12  magazine or periodical to Plaintiff.  (Pendergraft Decl. ¶ 7.)   The evidence submitted by

13  Pendergraft indicates that her conduct was in compliance with regulations that prohibit her from

14  distributing magazines or periodicals that are obscene, tend to incite violence, or concern

15  gambling, lotteries, the making of weapons, destructive devices, plans to escape or assist in an

16  escape from lawful custody, or any information that would create a clear and present danger of

17  violence and physical harm to persons in or outside of the facilities of the Department.  (Id. ¶ 4.)

18         The Court finds that Defendant Pendergraft has submitted evidence that establishes the

19  lack of existence of a triable issue of fact - there is no evidence that Pendergraft arbitrarily or

20  capriciously refused to deliver a magazine or periodical to Plaintiff.  Plaintiff has failed to oppose

21  the motion.  Defendant Pendergraft is therefore entitled to judgment.

22         Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary

23  judgment be granted, and judgment be entered in favor of Defendants and against Plaintiff on all

24  claims.

25         These findings and recommendations are submitted to the United States District Judge

26

1 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty

2 days after being served with these findings and recommendations, any party may file written

3 objections with the court and serve a copy on all parties.  Such a document should be captioned

4 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

5 shall be served and filed within ten days after service of the objections.   The parties are advised

6 that failure to file objections within the specified time waives all objections to the judge's

7 findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file

8 objections within the specified time may waive the right to appeal the District Court's order.

9 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11

12      IT IS SO ORDERED.

13 **Dated:    February 24, 2009          /s/  William M. Wunderlich**
                              UNITED STATES MAGISTRATE JUDGE